## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**ANTHONY MICHAEL WAIT,**

>        **Petitioner,**

**v.**                                    **Case No. 5:18cv023-MCR/CAS**

**MARK S. INCH, Secretary,**
**Florida Department of Corrections,[1]**

>        **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On January 23, 2018, Petitioner Anthony Michael Wait, a state inmate represented by counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, ECF No. 1, and a supporting memorandum, ECF No. 2.  On November 8, 2018, Respondent filed an answer and exhibits.  ECF No. 16.  Petitioner filed a reply on December 12, 2018. ECF No. 17.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has determined that no evidentiary

---

[1]The Clerk of Court shall substitute Mark S. Inch as Secretary of the Florida Department of Corrections. Mark S. Inch succeeded Julie L. Jones as Secretary for the Department of Corrections and is automatically substituted as Respondent pursuant to Federal Rule of Civil Procedure 25(d).

hearing is required for disposition of this case.   *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.   For the reasons stated herein, the

pleadings and attachments before the Court show Petitioner is not entitled

to federal habeas relief, and this § 2254 petition should be denied.

## Background and Procedural History

By amended information filed in Bay County Circuit Court case

number 032012CF03527C, the State of Florida charged Petitioner Anthony

Michael Wait with two counts, in connection with events that took place on

or about August 15, 2012, involving the throwing of a fire bomb from a car

toward a residence in Panama City, Florida:   (1) making, possessing, or

throwing, or an attempt to make, possess, or throw, any destructive device,

or aiding and abetting the same, and, in the course of committing the

offense, actually possessing a destructive device as defined in section

790.011, Florida Statutes, contrary to Florida Statutes 790.161(2), 775.087,

and 777.011; and (2) transporting a fire bomb with the intent that such fire

bomb be willfully and unlawfully used to damage by fire or explosion any

structure or property, or aiding and abetting the same, contrary to Florida

Statutes 806.111(1) and 777.011.   Ex. A at 78.[2]   Three males were in the
car including Patrick Pippen and Petitioner Wait.

Wait proceeded to a jury trial before Judge James B. Fensom on
October 29, 2013.   Exs. D and E (transcript).   Wait testified during the
trial.   Ex. E at 234-60.   The jury returned a verdict finding him guilty as
charged on both counts and specifically found he actually possessed a
destructive device.   *Id.* at 310-11; Ex. A at 131.   On November 15, 2013,
the judge adjudicated him guilty and sentenced him to a mandatory
minimum term of ten (10) years in prison on the first count and five (5)
years in prison on the second count, to be served concurrently.   Ex. A at
140-46; Ex. C at 241 (sentencing transcript).

Wait appealed his judgment and sentence to the First District Court of
Appeal (First DCA), assigned case number 1D13-6057.   *See* Exs. F (Initial
Brief), G (Answer Brief).   On October 20, 2014, the First DCA per curiam
affirmed the case without a written opinion.   Ex. H; Wait v. State, 150 So.
3d 1140 (Fla. 1st DCA 2014) (table).

On May 29, 2015, Wait, through counsel, filed a motion for post-

---

[2] Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's
answer, ECF No. 16.
Case No. 5:18cv023-MCR/CAS

conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.   Ex.

K at 225-40.   On January 13, 2016, the state post-conviction trial court

held a hearing on the Rule 3.850 motion.   Ex. M (transcript of hearing).

By order rendered February 22, 2016, the state court denied post-

conviction relief.   Ex. L at 374-81.   Wait appealed to the First DCA,

assigned case number 1D16-1167, and his counsel filed an initial brief.

Ex. N.   The State filed an answer brief, Ex. O, and Wait's counsel filed a

reply brief, Ex. P.   On March 3, 2017, the First DCA issued a written

opinion affirming the case; one judge dissented with a written opinion.   Ex.

Q; Wait v. State, 212 So. 3d 1082 (Fla. 1st DCA 2017).   The mandate

issued March 21, 2017.   Ex. R.

   Wait, through counsel, filed a Notice to Invoke Discretionary

Jurisdiction of the Supreme Court.   Ex. S.   Wait's counsel filed a

Jurisdictional Brief.   Ex. T.   The State also filed a Jurisdictional Brief.   Ex.

U.   By order on July 5, 2017, the Florida Supreme Court denied the

petition for review.   Ex. V.

   As indicated above, Wait, through counsel, filed a § 2254 petition in

this Court on January 23, 2018.   ECF No. 1.   He raises two grounds:

(1) "The Petitioner was denied his right to effective counsel when counsel failed to adequately represent the Petitioner during the plea process, resulting in the Petitioner rejecting a favorable plea offer."  *Id*. at 5.

(2) "The Petitioner's constitutional rights under the Constitution are currently being violated, as his judgment and sentence is in violation of the Double Jeopardy Clause."  *Id*. at 6.

Respondent filed an answer, with exhibits.   ECF No. 16.   Wait's counsel has filed a reply.   ECF No. 17.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody.   Section 2254(d) provides, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Case No. 5:18cv023-MCR/CAS

28 U.S.C. § 2254(d).   *See, e.g.,* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 180-83 (2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287-88 (11th Cir. 2011).   "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"   <u>Cullen</u>, 563 U.S. at 181 (quoting <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011), and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."   *Id*.

For claims of ineffective assistance of counsel (IAC), the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).   To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."   *Id.* at 688.   To

demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Id.* at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.*   For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"   <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)).   "And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."   *Id.*   It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard."   *Id.*

### <u>Ground 1</u>:   IAC – Plea Offer

In his first ground, Petitioner Wait asserts he was denied his right to effective assistance of counsel because counsel did not "adequately represent" him during the plea process resulting in his rejection of a favorable plea offer.   ECF No. 1 at 5.   Respondent indicates Petitioner

exhausted this claim in state court by presenting it in his post-conviction

motion.   ECF No. 16 at 14; *see* Ex. K at 225-38.

　　After setting forth the claim, the testimony from the evidentiary

hearing, and the <u>Strickland</u> standard, the state post-conviction court denied

the claim, making the following findings:

> Based on the evidence presented at the evidentiary
> hearing, the Court finds that counsel was not ineffective.
> There is no dispute that counsel informed the Defendant of the
> plea offer and that she reviewed the evidence with him,
> including his interrogation and Patrick Pippen's deposition
> testimony.   The Defendant admitted in his own testimony that he
> was made aware of the offer and that counsel did discuss
> the evidence with him.   He even admitted that he believed the
> evidence of his interrogation could be harmful in his case.   The
> Defendant admitted that he was made aware that the jury was
> going to have to choose to either believe his interrogation or his
> testimony at trial, and also admitted that counsel informed him
> of Mr. Pippen's testimony that would identify him as the person
> who made and threw the firebomb.   Although the Defendant
> claims that his attorney failed to explain the applicable law to
> him, his testimony regarding this fact was not credible, given
> the testimony provided by counsel to the contrary and the
> Defendant's own trial testimony that demonstrated that he was
> aware he must convince the jury that he was not complicit in
> any plan to bomb the victim's house.   Further, the Defendant
> provided ambivalent answers during the evidentiary hearing,
> which indicated to the Court that he was not being truthful.   In
> addition, the Defendant had almost completed his bachelor's
> degree when this offense was committed.   Although he did not
> have a legal education, the Defendant was likely to understand
> the concept of the principal theory better than the average
> criminal defendant.   Thus, the Court finds that Ms. Griffen's
> testimony regarding her advice to the Defendant was more

credible than the Defendant's testimony.

Here, unlike the claims recognized as sufficient in Alcorn, defense counsel did not fail to convey a plea offer, advise the Defendant to reject the plea offer, or misadvise the Defendant about the maximum penalty faced.   Rather, she immediately advised the Defendant of the plea offer, discussed each piece of incriminating evidence with the Defendant, explained the applicable law and how it related to the facts of his case, but ultimately left the decision of whether to accept the plea to the Defendant.   Counsel acknowledged that she told the Defendant that it was a "good plea," but also understood that the Defendant had reservations about entering a plea agreement that required him to become a convicted felon. While the Defendant appears to argue that counsel should have never told him that he had a chance to win his trial, the Defendant's argument is based purely on hindsight.   At the time the Defendant rejected the plea and proceeded to trial, his attorney had watched Patrick Pippen's trial from start to finish. She noted that the cases were very similar, arising out of the same operative facts, and that Mr. Pippen was still able to secure an acquittal in his case.   While the Defendant argues that he had his police statement and Mr. Pippen's testimony to overcome, counsel pointed out that the Defendant testified on his own behalf to explain that his statement was coerced, and she also sufficiently undermine Patrick Pippen's credibility, where he was drunk and high at the time of the offense.   Thus, even if counsel informed the Defendant that it was "possible" to win at trial, this was not erroneous advice given the circumstances that she faced at that time.   Counsel emphasized that she never guaranteed success, but that she believed that they had a good case and understood the Defendant's reservations in not wanting to accept the plea offer. Again, defense counsel could not force the Defendant to accept the plea offer.   She informed the Defendant of the terms of the offer, thoroughly discussed the case with him, and the Defendant chose not to accept the plea after she had advised him that this was a good plea offer.   While it appears in

hindsight that the Defendant should have accepted the plea, this Court cannot find that trial counsel's assessment of the case was unreasonable based upon her perspective at that time.   Accordingly, the Defendant has failed to prove that counsel was ineffective.

Ex. L at 379-80 (footnotes omitted).   The court noted that, although it did not need to address the prejudice prong of Strickland given the finding that counsel did not perform deficiently, "the Defendant's allegations that he would have accepted the plea are unbelievable given the testimony presented at the hearing."   *Id*. at 380 n.6.

On appeal, the First DCA affirmed with a written opinion. Ex. Q; Wait v. State, 212 So. 3d 1082 (Fla. 1st DCA 2017).   The state court rulings are entitled to deference and review is limited to the record before the state court.   *See* 28 U.S.C. § 2254(d); Cullen, 563 U.S. at 187-88; Richter, 562 U.S. at 99-103; Wright, 278 F.3d at 1255.

The First DCA "review[ed] the post-conviction court's findings for competent, substantial evidence."   Wait, 212 So. 3d at 1085.   In particular, that court explained "there is competent, substantial evidence to support the post-conviction court's finding that trial counsel's assessment that it was 'possible' for Appellant to be

acquitted at trial was not unreasonable."   *Id*.   Wait asserts, in his

supporting memorandum, that "in finding that trial counsel was not

deficient, the state appellate court did unreasonably apply <u>Strickland</u>"

and, further, "the state appellate court's conclusion was based on an

unreasonable determination of the facts in light of the evidence

presented in the State court proceedings."   ECF No. 2 at 19.

The record supports the state courts' rulings.   Ex. B at 179; Ex. M at

419-49 (testimony of defense counsel and Wait at evidentiary hearing).

The state post-conviction trial court sits as the fact-finder in Rule 3.850

proceedings and determines witness credibility, as the First DCA

recognized in its opinion.   <u>Wait</u>, 212 So. 3d at 1082, 1087; *see, e.g.*,

<u>Consalvo v. Sec'y for Dep't of Corr.</u>, 664 F.3d 842, 845 (11th Cir. 2011);

<u>Smith v. State</u>, 697 So. 2d 991, 992 (Fla. 4th DCA 1997); Fla. R. Crim. P.

3.850(d).   "Factual determinations by state courts are presumed correct

absent clear and convincing evidence to the contrary, § 2254(e)(1), and a

decision adjudicated on the merits in a state court and based on a factual

determination will not be overturned on factual grounds unless objectively

unreasonable in light of the evidence presented in the state-court

proceeding, § 2254(d)(2)."   <u>Miller–El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

In particular, the state court record reflects that, just prior to jury selection for Wait's trial, defense counsel stated, "There was, the last plea offer that the State offered to Mr. Wait was two years community control and I think a three year probation, as well as a letter of apology, and I just wanted to go on record as stating that Mr. Wait did decline that last plea offer."   Ex. B at 179.   In addition, the testimony of Wait's trial counsel at the evidentiary hearing supports the factual findings of the state post-conviction trial court, affirmed on appeal by the First DCA.   Ex. M at 419-38.

Specifically, defense counsel testified regarding the plea negotiations and that Wait himself decided to reject the plea because he did not want to be a convicted felon:

> Q   Let me talk to you a little bit about the plea negotiations in that case, that's been an issue that's been raised.   Tell me about what you can recall about plea negotiations and your discussions you had with Mr. Wait regarding those.
>
> A   Yes, sir.   When I got the case, after I got the case from Devin Collier, at the present time the plea was actually eight years.   So, when I got the case and I started working the case, it was at the time that we took Patrick Pippen's deposition, I believe that was September 20, 2013.
>
> After his deposition, I was, we were actually able to work out an even better plea that actually completely avoided jail time for Mr. Wait.   I believe it was two years community control,

two years probation, and a letter of apology, I'm not absolutely sure of the specific number of years, it's been a while.   But it was community control and probation.   And that day, I remember speaking to Mr. Wait for at least 30 minutes right after Patrick Pippen's deposition, but we also met on October 4th as well.   And so, I gave him time to think about it. I know he was really reluctant to become a convicted felon especially since Patrick Pippen had just been acquitted.   So, he was really reluctant to just accept a, you know, become a convicted felon based off of, how he put it, burnt grass. Because there really was no damage to the home, so he didn't feel that he should be a convicted felon over, you know, something that he thought was not as much damage was caused.

Q   So he understood, it was your impression that he understood that the plea offer was for non-prison time.   But because he could be a convicted felon, was there an issue about nursing school that came up?

A   Well, yeah, he was a nursing student and he knew being a convicted felon could, it could have adversely impacted his future as a nurse, being a convicted felon.   And I, it was my impression that he did not want to be a convicted felon.

Q   Okay.   So, despite the fact the plea offer went from eight years down to non-prison, he still rejected that offer?

A   Yes, sir.   He rejected up until the day of trial.   And I remember e-mailing you and letting you know that he was reluctant to take the offer.   And on October 4th, you e-mailed me and let me know that, hey, okay, if he's reluctant then we'll just let the jury decide, so we took it to trial.   And that day in trial, I confirmed one last time that he was rejecting the plea offer and that's when I decided to put it on the record.

Ex. M at 421-43.   Defense counsel testified she went over the evidence

with Wait, as well as the charges and the plea offer, and it was Wait's

decision to take the case to trial.   *Id*. at 420-21, 424.   Defense counsel

testified, "And I, it is my sincere opinion that since Patrick Pippin was

acquitted just months before, you know, me and Mr. Wait believed he had a

strong case as well."   *Id*. at 424.   On cross, defense counsel testified she

never advised Wait to reject the plea offer.   *Id*. at 425.   She further

testified on cross:

> Q   It was not your opinion that it was in his best interest to go
> to trial because you were very confident that you could be
> successful?
>
> A   No.   It was my opinion, when faced with being a convicted
> felon, I put it, I made it Mr. Wait's choice because at the end of
> the day, it was his choice.   I counseled him and said, hey, you
> can take this and you will be a convicted felon or you could take
> it to trial.
>
> Q   Where he would also become a convicted felon?
>
> A   Well, he could also, but like Patrick Pippin, you can be
> acquitted and not have anything at all.

*Id*. at 425-26.   Defense counsel testified regarding comparisons between

Pippin's trial and Wait's trial, including:

> I do think the cases were similar because they were all the
> same facts.   And all of the evidence was the same up until he
> got Patrick Pippin's testimony, and Patrick Pippin was able to
> testify at Mr. Wait's trial.   But even with that, Patrick Pippin
> admitted to being drunk and high on pills.   So, even though he

was a witness, that doesn't mean that the jury would believe
him as a credible witness.

*Id.* at 429.    Defense counsel further testified regarding the plea

considerations:

> Q   So, from an attorney's perspective, when you're looking at
> the case as a whole and determining what avenue you should
> advise your client to take, would you have explained to him that
> the jury would be faced with a choice to determine which story
> of his [Wait's recorded law enforcement interrogation or Wait's
> trial testimony] they believed?
>
> A   Yes.
>
> Q   And would you have also gone over with him the fact that
> not only are they hearing two stories from him, they're also
> hearing a story from Mr. Pippin whose story is more similar to
> the old story of Mr. Wait's?   So, they're basically hearing two
> bad stories against Mr. Wait and one now of him coming
> forward and telling the truth?
>
> A   Yes.   And during our conversation, I remember Mr. Wait
> telling me he didn't want to be a convicted felon over burnt
> grass, so I completely understood the situation that was at
> stake.   But, of course, everything in hindsight is 20/20, you can
> see everything clearly.   But at the time, Mr. Wait was not a
> convicted felon, at the time, didn't want to become a convicted
> felon.
>
> Q   You stated on direct, for the State specifically, I wrote it
> down, me and Mr. Wait thought he had a strong chance at trial.
> Did you believe that Mr. Wait had a strong chance at trial?
>
> A   Yes, given his words that he was not complicit with anything
> Patrick Pippin was doing.

> Q   In total, looking at all the circumstances, Mr. Pippin's testimony versus Mr. Wait's, did you advise him that you believe that you had a strong chance at trial?
>
> A   I advised him that it is possible that he can win.   I advised him also that he could take the plea.   I would never go to trial knowing the client would lose.   If he thought he had a chance, if I thought no way you had a chance, I would get off the case before I tried to try the case.
>
> But if he was confident that he could win and I was confident that he could win, I was confident that we could at least cast reasonable doubt, then yes, I'd say there is a chance you can win.   I would never guarantee success, ever.   But, yes, I gave him a chance that, I did say there was a chance he could win.

*Id*. at 432-44.   Defense counsel testified Wait's trial was her first trial in

Florida.   *Id*. at 434.   She testified she thought Wait should have accepted

the plea offer:

> Q   You said before that you advised Mr. Wait about the plea. But because he didn't want to be a convicted felon, you just left it up to him.   Was, in your opinion, should he have taken the plea or should he have gone to trial?
>
> A   In my opinion, I would have definitely said he should have taken the plea.   I understand why he didn't want to, because he wanted to take his chances just like Patrick Pippin did.   But looking back in hindsight, his original plea was eight years, and after the deposition I got it down to no jail time.   So, I would say that was a success in and of itself.
>
> And I remember sitting down in my office with him talking to him about it.   And I thought it was a good deal.   I thought it was a good deal.   But when faced with a convicted felon, he

didn't really want that.   So, I actually reached back out to Bob and presented the same plea, but with a misdemeanor.   So, but when Bob said, no, we couldn't come to an agreement, he wanted the jury to decide.

Q   But you're saying you would have taken the plea.   So, did you advise Mr. Wait that you, as his attorney, being the person who knows the law better than him since he'd never been in trouble before, did you advise him that, in your opinion, he should take the plea?

A   I advised him that it was a good plea.

Q   So, my next question then is when you put it on the record, because you went, you purposefully put it on the record the day of trial, you did not say Mr. Wait is rejecting this plea against my advice.   You only said, I just want to put on the record Mr. Wait has rejected the State's offer.   I'm just wondering why –

A   I'm sorry.   Just because I didn't say it, doesn't mean I didn't advise him.   I was just saying he was not accepting the plea. But, of course, I advised him of the plea.   I advised him the progress we had made.   But when Mr. Wait, who was then still a free man, was looking at being a convicted felon on community control for two years, that didn't sound that appeasing to him.   Now, of course, when you're spending ten years in prison, community control sounds like heaven.   But at the time, that wasn't the case and those were not his circumstances.

*Id*. at 435-37.   Although Wait testified to the contrary (that defense counsel told him "do not take this offer, your co-defendant beat these charges" and he rejected the plea based solely on counsel's advice, *id*. at 446), the post-conviction trial court specifically, and permissibly, accepted the testimony of

defense counsel over that of Wait.

The record thus supports the determination, affirmed on appeal by the First DCA, that defense counsel's assessment of the case was not unreasonable and that she informed Wait of the plea offer, thoroughly discussed the case with him, and Wait himself chose not to accept the offer.   The record supports the state court's determination that Wait made the decision to reject the plea offer with knowledge of the strengths of the State's evidence (law enforcement interrogation recording and Pippen's testimony) and with counsel's advice that the State's offer was a "good plea."   Ex. L at 380; *see* Ex. M at 419-38 (testimony of defense counsel); 440-45 (testimony of Wait).   Under the double deferential review this Court applies to a Strickland claim evaluated pursuant to the § 2254(d)(1) standard, Wait's IAC claim fails.

Moreover, as the state post-conviction trial and appellate courts indicated, Wait has not shown prejudice because he has not shown that he would have accepted the plea offer but for the alleged ineffectiveness of counsel.   *See* Lafler v. Cooper, 566 U.S. 156, 164 (2012) (clarifying that Sixth Amendment right to effective assistance of counsel extends to negotiation and consideration of plea offers that lapse or are rejected, and

concluding that, to establish prejudice, defendant must show reasonable probability that but for counsel's ineffectiveness: (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed").   The record, particularly defense counsel's testimony at the evidentiary hearing, supports the post-conviction trial court's finding, affirmed by the First DCA, that Wait's assertion that he would have accepted the plea is not credible given the testimony presented at the hearing that he did not want a felony conviction.   *See* Ex. M at 422-23, 436-374; Ex. L at 380 n.6.

Based on the foregoing, Petitioner Wait has not shown that the state courts' rejection of this claims involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2).   Accordingly, this ground should be denied.

## <u>Ground 2</u>:   **Double Jeopardy**

In his second ground, Petitioner Wait asserts his judgment and

sentence violates the Double Jeopardy Clause.   ECF No. 1 at 6.

Specifically, Wait argues:

> The Petitioner was charged with one count of making, possessing, or throwing a destructive device and one count of transporting a fire bomb.   The jury returned a verdict of guilt, as to both counts.   In addition, the jury made a special finding that the Petitioner actually possessed the destructive device that was charged in count one.   The verdict of guilty, coupled with the finding of actual possession, exposed the Petitioner to a sentence under Section 775.087, Florida Statute, commonly known as the 10-20-life statute.   Both offenses that the Petitioner was convicted of contain identical elements under the statute.   As a result, the Petitioner is being punished twice for a single crime arising from one criminal episode.

*Id*.

As Respondent indicates, Wait raised this claim as the first point in

his direct appeal.   Ex. F.   The First DCA per curiam affirmed the case

without a written opinion.   Ex. J; Wait v. State, 150 So. 3d 1140 (Fla. 1st

DCA 2014).   The state court rulings are entitled to deference and review is

limited to the record before the state court.   *See* 28 U.S.C. § 2254(d);

Cullen, 563 U.S. at 187-88; Richter, 562 U.S. at 99-103; Wright, 278 F.3d

at 1255.

The United States Supreme Court has explained that the Double

Jeopardy Clause of the Fifth Amendment provides three separate

constitutional protections:

> It protects against a second prosecution for the same offense
> after acquittal. It protects against a second prosecution for the
> same offense after conviction. And it protects against multiple
> punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969), overruled on other

grounds, Alabama v. Smith, 490 U.S. 794 (1989) (concerning presumption

of vindictiveness in sentencing).   The Double Jeopardy Clause applies to

the states through the Fourteenth Amendment.   Benton v. Maryland, 395

U.S. 784, 787 (1969).   In this case, Wait argues the State of Florida

violated the third protection as he asserts he received multiple punishments

for a single crime in one criminal episode.   ECF No. 1 at 6.

No double jeopardy violation occurred here.   "[T]he prohibition

against double jeopardy does not prohibit multiple convictions and

punishments where a defendant commits two or more distinct criminal

acts."   Hayes v. State, 803 So.2d 695 (Fla. 2001) (citing Blockburger v.

United States, 284 U.S. 299, 302-04 (1932)).   A review of the offenses

involved in Wait's case reveals each requires elements the other does not

and, thus, no double jeopardy violation has occurred.

Wait was charged with, and convicted of, two separate offenses:

(1) **making, possessing, or throwing a destructive device**:
making, possessing, or throwing, or an attempt to make,
possess, or throw, any destructive device, or aiding and
abetting the same, and, in the course of committing the offense,
actually possessing a destructive device as defined in section
790.001, Florida Statutes, contrary to Florida Statutes
790.161(2), 775.087, and 777.011 (2011); and

(2) **transporting a fire bomb**:   transporting a fire bomb with
the intent that such fire bomb be willfully and unlawfully used to
damage by fire or explosion any structure or property, or aiding
and abetting the same, contrary to Florida Statutes 806.111(1)
and 777.011 (2011).

Ex. A at 78.   For the first offense, the jury had to find Wait "willfully and

unlawfully made, possessed, or threw; or attempted to make, possess, or

throw a destructive device."   Ex. A at 109-10; *see* § 790.161, Fla. Stat.

(2011).   For the second offense, the jury had to find Wait "transported a

firebomb."   Ex. A at 117; *see* § 806.111(1), Fla. Stat. (2011).

Based on the foregoing, Petitioner Wait has not shown that the state

courts' rejection of this claims involved an unreasonable application of

clearly established federal law or that it was based on an unreasonable

determination of the facts.   *See* 28 U.S.C. § 2254(d)(1)-(2); *see also, e.g.*,

Sanabria v. U.S., 437 U.S. 54, 69 (1978) ("Few, if any, limitations are

imposed by the Double Jeopardy Clause on the legislative power to define

offenses.").   Accordingly, this ground should be denied.

## Conclusion

Petitioner Anthony Michael Wait is not entitled to federal habeas relief.   The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   The parties shall make any argument as to whether a certificate should issue by objections to this Report and

Recommendation.

Leave to appeal in forma pauperis should also be denied.   *See* Fed.

R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not

otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

§ 2254 petition (ECF No. 1).   It is further **RECOMMENDED** that a

certificate of appealability be **DENIED** and that leave to appeal in forma

pauperis be **DENIED**.   The Clerk shall substitute Mark S. Inch for Julie

Jones as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on January 18, 2019.

> S/ Charles A. Stampelos
> **CHARLES A. STAMPELOS**
> **UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).   A copy of the objections shall be served upon all other parties.   A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.   Fed. R. Civ. P. 72(b)(2).   Any different deadline that may**

**appear on the electronic docket is for the Court's internal use only and does not control**.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.